## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TOMMY GODDARD, DAVID CALLAHAN, MIKE BARKER, WAYMON J. GODDARD, GRANT PARKER, AND PARKER WHITE LLC, | ) ) ) ) ) | |
| | ) | CIVIL ACTION FILE |
| Plaintiffs, | ) ) | NO. 1:12-CV-761-AT |
| v. | ) ) | |
| REGIONS BANK, INC., GLEN REAVES, LANEASE DICKENS-FULLER, LAW OFFICE OF LANEASE D. FULLER, RICHARD BUCKNER, DWAYNE BRYANT DAWSON, TIMOTHY GROSSI, WILLIAM FRANK MCLEAN, AND GENE NOWAK, | ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## AMENDED COMPLAINT

COME NOW Tommy Goddard ("Goddard" or "T. Goddard"), David Callahan ("Callahan"), Mike Barker ("Barker"), Waymon J. Goddard ("J. Goddard"), Grant Parker ("Parker"), and Parker White LLC ("Parker White") (collectively the "Plaintiffs") file this Amended Complaint against Defendants Regions Bank, Inc. ("Regions"), Glen Reaves ("Reaves"), Lanease D. Fuller, Law Office of Lanease D. Fuller (collectively, "Fuller"), Richard Buckner ("Buckner"),

Dwayne Bryant Dawson ("Dawson"), Timothy Grossi ("Grossi"), William Frank McLean ("McLean"), and Gene Nowak ("Nowak") (Regions, Reaves, Fuller, Buckner, Dawson, Grossi, McLean, and Nowak are collectively "Defendants").

## INTRODUCTION

1.

This case involves a sophisticated real estate investment scam knowingly perpetrated on Georgia Residents by Defendants, including a Regions Bank officer and an attorney in Texas, in order to take $1.657 million from Plaintiffs.

2.

In reliance on the representations made by Defendants, collectively and individually, Plaintiffs provided $1.657 million to be held in an attorney trust account and used solely as "proof of funds" for third parties to close various real estate transactions.

3.

Defendants represented that the funds provided by Plaintiffs were secure because the funds were required to be kept in Defendant Fuller's alleged attorney trust account at Regions, an FDIC insured bank.

4.

Plaintiffs were also assured by Defendants that the money deposited in the alleged attorney trust account at Regions was safe because the account was backed by notarized Regions Letters of Undertaking, which were executed by Defendant Reaves, a Regions Bank officer acting with authority on behalf of Regions.

5.

At some point after Plaintiffs' money was wired to Fuller's alleged attorney escrow trust account, Defendants withdrew the funds from the account for the benefit of Defendants and have been unable or unwilling to refund monies of Plaintiffs.

6.

When the contemplated real estate transactions failed to close, Fuller refused to wire funds back to Plaintiffs. Plaintiffs, through Parker, demanded that Regions honor its Letters of Undertaking.

7.

A representative of Regions told Parker that Defendant Reaves resigned his position as an officer of Regions.

8.

While Fuller paid Plaintiffs certain fees for supplying the proof of funds, none of the monies sent by Plaintiffs have ever been returned to Plaintiffs after the transactions failed to close, despite numerous demands for return of Plaintiffs' funds

## STATEMENT OF JURISDICTION AND VENUE

9.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) as this action involves a federal question, and pursuant to 28 U.S.C. § 1332, as there is complete diversity among Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Court has supplemental pendant jurisdiction to address Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Venue is proper pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965.  This Court also has jurisdiction over certain Defendants residing outside the State of Georgia pursuant to 18 U.S.C. § 1965 and O.C.G.A. § 9-10-91.

10.

Plaintiff Tommy Goddard ("Goddard" or "T. Goddard") resides in Cohutta, Georgia.

11.

Plaintiff David Callahan ("Callahan") resides in Cohutta, Georgia.

12.

Plaintiff Mike Barker ("Barker") resides in Cohutta, Georgia.

13.

Plaintiff Waymon J. Goddard ("J. Goddard") resides in Cumming, Georgia.

14.

Plaintiff Grant Parker ("Parker") resides in Dalton, Georgia.

15.

Plaintiff Parker White LLC ("Parker White") is a Georgia limited liability company, of which Plaintiff Parker is the sole member.  Parker White's principal office is in Dalton, GA.

16.

Defendant Regions Bank, Inc. is an Alabama Corporation that is licensed to and does business in Georgia, and is subject to the jurisdiction and venue of this Court.  Regions can be served at its registered agent:  Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092. This Court has personal jurisdiction over Regions.  The Court has general jurisdiction over Regions because Regions regularly transacts business in Georgia.

The Court has specific jurisdiction over Regions because its activities in Georgia relate to Plaintiffs' claims against it, in that Regions knowingly and intentionally engaged in business transactions with residents of this District. This Court also has jurisdiction over Regions under 18 U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

17.

Defendant Glen Reaves is a former employee of Regions. Reaves is subject to the jurisdiction and venue of this Court, and can be served at his place of employment at PNC Mortgage, 17225 El Camino Real, Suite 110, Webster, Texas 77058. This Court has specific personal jurisdiction over Reaves because his activities in Georgia, including conspiring to defraud the Georgia Plaintiffs, relate to Plaintiffs' claims against him. The Court additionally has jurisdiction over Reaves under 18 U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

18.

Defendant Lanease Dickens-Fuller is subject to the jurisdiction and venue of this Court, and can be served at her residence at 3815 Arbor Dr., Pearland, Texas 77584 or at her place of work at 4615 Southwest Freeway, Suite 820, Houston, Texas 77027. Fuller has expressly consented by contract to personal jurisdiction

and venue in this District.  This Court also has specific personal jurisdiction over

Fuller because she purposefully directed her illegal activities at Plaintiffs, who are

Georgia residents.  The Court additionally has jurisdiction over Fuller under 18

U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

19.

Defendant Law Office of Lanease D. Fuller is subject to the jurisdiction and

venue of this Court.  The Law Office of Lanease D. Fuller can be served through

its agent, Lanease Dickens-Fuller.  The Court has specific jurisdiction over The

Law Office of Lanease D. Fuller because its activities in Georgia relate to

Plaintiffs' claims against it, in that The Law Office of Lanease D. Fuller knowingly

and intentionally engaged in business transactions with residents of this District.

The Court additionally has jurisdiction over The Law Office of Lanease D. Fuller

under 18 U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-

10-91.

20.

Defendant Richard Buckner ("Buckner") is subject to the jurisdiction and

venue of this Court, and can be served at his residence at 1216 Chatsworth Dr.,

Colleyville, TX  76034.  This Court has specific personal jurisdiction over Buckner

because he purposefully directed his illegal activities at Plaintiffs, who are Georgia

residents.  The Court additionally has jurisdiction over Buckner under 18 U.S.C. §
1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

21.

Defendant Dwayne Bryant Dawson ("Dawson") is subject to the jurisdiction
and venue of this Court, and can be served at his residence at 4003 Bowden Lane,
Spring, TX  77386.  This Court has specific personal jurisdiction over Dawson
because he purposefully directed his illegal activities at Plaintiffs, who are Georgia
residents.  The Court additionally has jurisdiction over Dawson under 18 U.S.C. §
1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

22.

Defendant Timothy Grossi ("Grossi") is subject to the jurisdiction and venue
of this Court, and can be served at his residence at 6017 Pine Ridge Road, Unit
378, Naples, Florida 34136.  Grossi has expressly consented by contract to
personal jurisdiction in this district.  This Court also has specific personal
jurisdiction over Grossi because he purposefully directed his illegal activities at
Plaintiffs, who are Georgia residents.  The Court additionally has jurisdiction over
Grossi under 18 U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A.
§ 9-10-91.

23.

Defendant William Frank McLean ("McLean") is subject to the jurisdiction and venue of this Court, and can be served at his residence at 796 108th Avenue, Naples, Florida 34108. McLean has expressly consented by contract to personal jurisdiction in this district. This Court also has specific personal jurisdiction over McLean because he purposefully directed his illegal activities at Plaintiffs, who are Georgia residents. The Court additionally has jurisdiction over McLean under 18 U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

24.

Defendant Gene Nowak ("Nowak") is subject to the jurisdiction and venue of this Court, and can be served at his office at 10001 Tamiami Trail North, Naples, Florida 34108. This Court has specific personal jurisdiction over Nowak because he purposefully directed his illegal activities at Plaintiffs, who are Georgia residents. The Court additionally has jurisdiction over Nowak under 18 U.S.C. § 1965 and under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

## FACTS

### Background and Overview of the Unlawful Scheme

25.

Prior to the transactions at issue in this case, between January and August

2010, Plaintiffs Parker and Parker White LLC had made short-term "proof of

funds" transactions with Defendant Nowak.

26.

In early January 2011, Defendant Nowak contacted Plaintiffs Parker and

Parker White to participate in a new series of "proof of funds" transactions,

purportedly for a real estate investment group in Texas.

27.

Nowak represented that the funds would facilitate certain "A-B, B-C, Real

Estate Owned ('REO') Short Sale" real estate transactions by certain third parties

in exchange for substantial returns on funds provided solely to be used as "proof of

funds."

28.

Nowak solicited Plaintiffs Parker and Parker White on behalf of Defendants

Dawson and Buckner.

29.

Nowak, Buckner, Dawson, Reaves, and Fuller represented to Plaintiffs

Parker and Parker White that funds provided would be used only as "proof of

funds" and could not leave Fuller's attorney escrow account, except to be returned

to Plaintiffs.

30.

Fuller signed many agreements stating that she was the Escrow Agent for the funds and setting forth her obligations as Escrow Agent.

31.

Nowak provided Plaintiffs Parker and Parker White with the names of purported borrowers, Defendants Grossi and McLean.  Defendants Buckner and Dawson were purportedly brokers or agents for Defendants McLean and Grossi.

32.

Plaintiffs Grant Parker and Parker White entered into borrower contracts with Grossi and McLean.

33.

Plaintiffs Grant Parker and Parker White agreed to the proof of funds transactions on the condition that Regions Bank, Reaves, and Fuller would protect the funds deposited as "proof of funds."  Defendants Reaves and Fuller represented to Plaintiffs Grant Parker and Parker White that such funds would not be transferred from Fuller's attorney escrow account without written authorization from Plaintiffs Parker and Parker White.

34.

Plaintiffs Parker and Parker White did not submit funds to Fuller until Plaintiffs Parker and Parker White received Letters of Undertaking from Regions.

35.

Plaintiffs Parker and Parker White were contacted by Reaves, a Regions officer acting with actual or apparent authority on behalf of Regions, who represented to Plaintiffs that the funds were being placed into Fuller's attorney escrow account.  Reaves stated that several "fund distribution blocks" would be placed on Fuller's attorney escrow account by Regions Bank so that the funds could not leave the account for any reason, except to return to funds to the escrow account of Lynn Doss ("Doss"), attorney for Plaintiffs Parker and Parker White. Finally, Reaves agreed, as an officer of Regions Bank acting with actual or apparent authority, to provide Letters of Undertaking from Regions Bank.

36.

In addition, before providing funds, Parker, on behalf of himself and other Plaintiffs, traveled to League City, Texas to verify that Reaves was an officer at Regions with authority to issue the bank Letters of Undertaking.  Parker met with Reaves at Reaves' office in Regions bank to verify the identity of Reaves.

37.

Buckner, Dawson, Grossi, and Nowak attended the meeting at Regions bank.

38.

Reaves presented to Plaintiffs Parker and Parker White proof of Reaves' identity and authority at Regions, including that Reaves was a Senior Vice President with Regions and had authority to bind Regions for sums up to $10,000,000. Reaves later provided a job description with his name and employee I.D. number at the top of the document that confirmed Reaves had such authority.

39.

Reaves signed notarized Letters of Undertaking issued on Regions' stationary, which Reaves tendered to Parker as evidence of the security of the funds, which Plaintiffs were being asked to deposit as proof of funds into the alleged escrow account of Defendant Fuller.

40.

Satisfied with Reaves' representations that he was a Regions officer with authority to protect the funds and with signed and notarized Letters of Undertaking, Plaintiffs agreed to deposit their funds in Fuller's purported escrow account at Regions Bank.

41.

Defendants' unlawful scheme was perpetrated over four separate transactions.  Defendants knowingly solicited and received funds from Georgia residents, and had numerous communications with Parker in Georgia.

42.

Plaintiffs Parker and Parker White funded the initial transaction known as "Nassau Bay."  Parker and Parker White funded the Nassau Bay transaction without funds from the other Plaintiffs.

43.

The other Plaintiffs agreed to provide funds through Plaintiffs Parker and Parker White as their agent, to be used solely as "proof of funds" to complete the real estate transactions.  These three transactions were known as "Midland," "Airport," and "Almeda."

44.

Plaintiffs Parker and Parker White entered into Borrower Contract and Master Escrow Agreements ("Escrow Agreements") with Fuller, Grossi, and McLean.

45.

Plaintiffs provided a total of $1,657,000 to be used as "proof of funds" in the four transactions by depositing them into Fuller's alleged escrow account at Regions Bank.

46.

The funds provided by Plaintiffs into Fuller's alleged escrow account are no longer in the account according to a Regions security investigator.

47.

The funds have not been returned to Plaintiffs.

48.

In May 2011, Plaintiffs made a formal written demand via email on Regions to honor the Letters of Undertaking that were issued by Regions.

49.

In response to the demand, Regions acknowledged Reaves was in management at Regions and the Letters of Undertaking were in fact signed and notarized at Regions, but Regions denied the validity of the Letters of Undertaking. Regions claimed that Reaves was a "rogue" employee.

## Roles of Defendants in the Unlawful Scheme

50.

The roles of the Defendants in the Unlawful Scheme (defined as the Midland, Airport, Almeda, and Nassau Bay Transactions) include, but are not limited to, the following conduct:

(a)     Nowak had worked with Plaintiffs Parker and Parker White in the past in proof of funds transactions.

(b)     Nowak contacted Plaintiffs Parker and Parker White regarding Buckner's and Dawson's search for persons who would provide money to serve as "proof of funds" in their purported real estate transactions.

(c)     Nowak told Plaintiffs Parker and Parker White that Buckner and Dawson, as brokers, were involved in the real estate transactions and that Grossi and McLean were the purported "borrowers" in the real estate transactions who needed money to serve as "proof of funds."

(d)     Defendants conspired with Reaves in order to provide the Regions Letters of Undertaking, and to open and control a fraudulent attorney escrow account at Regions.

(e)     Fuller purportedly did title searches and drafted closing documents on the properties purportedly involved in the real estate transactions.

(f)     Fuller conspired with Reaves to fraudulently open an alleged attorney escrow account in her name at Regions that was used to hold the "proof of funds" provided by Plaintiffs.

(g)     Fuller entered into a series of Escrow Agreements to facilitate the transactions.  In each Agreement, among other things, she:  agreed to serve as the Escrow Agent for the "proof of funds" provided by Plaintiffs; agreed to ensure all closings would be conducted as required by the parties; agreed to deposit funds into her attorney escrow account at Regions; gave the name of the Regions account and the account number; agreed to maintain the account at Regions under her direct supervision and control; agreed to ensure that no funds were released except as provided in the Escrow Agreements; agreed to return Plaintiffs' funds if the transaction did not close; and acknowledged a fiduciary obligation to Plaintiffs.

(h)     Fuller had multiple conversations with Plaintiffs and their representatives wherein she represented that the funds were protected as set forth above and would be returned.

(i)     As an officer of the Regions Bank with actual or apparent authority to act on behalf of the bank, Reaves opened the alleged attorney escrow account at Regions, and Regions allowed the account to be opened, even though Fuller did not possess the financial requirements to open such an account.

(j)     As an officer of Regions Bank with actual or apparent authority to act on behalf of the bank, Reaves held himself out as a Senior Vice President of Regions Bank and falsely attested to the safety and protection of the Plaintiffs' "proof of funds" deposited with Regions.

(k)     As an officer of Regions Bank with actual or apparent authority to act on behalf of the bank, Reaves provided the Regions Letters of Undertaking, whereby Regions guaranteed the funds deposited by Plaintiffs into Fuller's alleged account.

(l)     Reaves provided the Regions Letters of Undertaking in the course of his employment by Regions Bank, with the actual or apparent authority to bind the bank, and upon information and belief, with the knowledge of other employees of Regions Bank.

(m)    Regions benefitted from Reaves' participation in the Unlawful Scheme by holding and controlling the funds deposited by Plaintiffs, and by refusing to honor the Letters of Undertaking.

(n)     Based on information and belief, Nowak and Reaves received money from the unlawful scheme.

(o)     Based on information and belief, Defendants withdrew and retained Plaintiffs' money.

## The Nassau Bay Transaction

51.

On January 13, 2011, Plaintiffs Parker and Parker White and Defendants Fuller and Grossi executed a Borrower Contract and Master Escrow Agreement ("Nassau Bay Agreement").  A true and correct copy (with redactions) of the Nassau Bay Escrow Agreement is attached as **"Exhibit 1"**.

52.

The Nassau Bay Escrow Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Georgia" and that jurisdiction and venue for any action relative to the Agreement shall lie in Georgia.

53.

In the Nassau Bay Escrow Agreement, Fuller agreed to serve as the Escrow Agent for the "proof of funds" provided by Plaintiffs; agreed to ensure all closings would be conducted as required by the parties; agreed to deposit funds into her attorney escrow account at Regions; gave the name of the Regions account and the account number; agreed to maintain the account at Regions under her direct supervision and control; agreed to ensure that no funds were released except as provided in the Nassau Bay Escrow Agreement; agreed to return Plaintiffs' funds

if the transaction did not close; and acknowledged a fiduciary obligation to Plaintiffs.

54.

Under the Nassau Bay Escrow Agreement, Plaintiffs Parker and Parker White agreed to wire $375,000 to Fuller's attorney escrow account to be used as "proof of funds" in a real estate transaction.

55.

Plaintiffs Parker and Parker White deposited $375,000 into Fuller's alleged escrow account at Regions to be used as "proof of funds" for the Nassau Bay Transaction.

56.

In exchange for the provision of said "proof of funds," for 45 days the Defendants promised to make certain payments to Plaintiffs which included, but not limited to:

    a.  An immediate nonrefundable upfront fee of $56,250.

    b.  The ultimate return of the initial investment of $375,000.

    c.  A premium fee of $518,750 should the alleged real estate transaction actually close (including additional $200,000 promised as part of third extension agreement), and

d. Extension fees if the extensions were requested and granted.

57.

Plaintiffs Parker and Parker White were paid a total of $56,250 in immediate nonrefundable upfront fees for providing the "proof of funds" for the Nassau Bay Transaction.

58.

On January 10, 2011, Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Karen Lee Hart notarized, a Letter of Undertaking regarding the Nassau Bay Transaction from Regions ("Regions Nassau Bay LOU"). A true and correct copy of the Regions Nassau Bay LOU is attached as **"Exhibit 2"**.

59.

The Regions Nassau Bay LOU provided in pertinent part that:

> Under the condition of receipt of $375,000, at Regions Bank, … do unconditionally and irrevocably confirm and undertake; that on March 15, 2011…promise to pay against this full bank undertaking, to the order of Grant Parker of Parker White, LLC…the sum of $375,000…

(*See* Ex. 2.)

58.

Plaintiffs Parker and Parker White would not have entered into the Nassau Bay Agreement without the Regions Nassau Bay LOU, together with the assurance by Regions that the funds would be held solely in the alleged escrow account of Fuller, and with appropriate blocks in place to prevent the movement of Plaintiffs' funds except for the transfer of said funds to the Escrow Account of Lynn Doss, of Doss and Associates, the attorney for Plaintiffs Parker and Parker White.

59.

Pursuant to the Nassau Bay Fee and Pay Order Agreement, the funds were "not to be transferred from the Escrow Account of the Closing Escrow Agent for any reason" other than to be returned to the Escrow Account of Lynn Doss, of Doss and Associates, the attorney for Plaintiffs Parker and Parker White and the funds were to be used only as "proof of funds" for a real estate transaction.

60.

Fuller, Reaves, Nowak, Grossi, Buckner, and Dawson represented to Plaintiffs Parker and Parker White that the funds would remain in Fuller's alleged trust account until the close of the transaction when the investment and all premiums would be due, or, until the Plaintiffs requested that no further extensions be granted and that the initial investment be returned to Plaintiffs.

61.

On March 13, Plaintiffs Parker and Parker White were told by Fuller,

Reaves, Nowak, Grossi, Buckner, and Dawson that there were delays in closing the

Nassau Bay Transaction.

62.

As a consequence of the purported delays, on or about March 14, 2011,

Grossi, Fuller and Plaintiffs Parker and Parker White executed an extension to the

Borrower Contract and Master Escrow Agreement.  A true and accurate copy (with

redactions) of said extension is attached as **"Exhibit 3"**.

63.

As a part of the extension Plaintiffs Parker and Parker White were paid an

extension fee of $28,125 by Defendants.

64.

As part of the extension, Reaves, as an officer of Regions Bank with actual

or apparent authority to act on behalf of Regions, executed, and Nancy Tabar

Lewis notarized, a March 14, 2011, Letter of Undertaking from Regions regarding

the Nassau Bay Transaction ("Regions Nassau Bay Second LOU").  A true and

correct copy (with redactions) of Regions Nassau Bay Second LOU is attached as

**"Exhibit 4"**.

65.

After additional purported delays, on or about April 14, 2011, Defendants Grossi, Fuller and Plaintiffs Parker and Parker White executed a Second Extension to the Borrower Contract and Master Escrow Agreement.  A copy of the April 14, 2011, Nassau Bay Transaction Extension (with redactions) is attached as **"Exhibit 5"**.

66.

As a part of the extension, Plaintiffs Parker and Parker White were promised an extension fee of $27,500 but were paid only $5,000.

67.

As a result of said extension, Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Michael D. Wallach notarized, an April 15, 2011, Letter of Undertaking from Regions regarding the Nassau Bay Transaction ("Regions Nassau Bay Third LOU").  A true and accurate copy (with redactions) of the Regions Nassau Bay Third LOU is attached as **"Exhibit 6"**.

68.

After additional delays, on or about May 2, 2011, Defendants Grossi, Fuller
and Plaintiffs Parker and Parker White executed a Third Extension to the Borrower
Contract and Master Escrow Agreement.

69.

As a part of the extension, Plaintiffs Parker and Parker White were promised
an additional payment of $200,000 upon the closing of the alleged real estate
transaction but were only paid $12,200.

70.

As a result of said extension, Reaves, as an officer of Regions Bank with
actual or apparent authority to act on behalf of Regions, executed, and Michael D.
Wallach notarized, a May 2, 2011, Letter of Undertaking from Regions regarding
the Nassau Bay Transaction ("Regions Nassau Bay Fourth LOU").  A true and
accurate copy (with redactions) of the Regions Nassau Bay Fourth LOU is attached
as **"Exhibit 7"**.

71.

Plaintiffs Parker and Parker White were paid a total of $45,325 as
consideration for all of the extensions.

72.

After the last extension expired, Defendants did not return any funds to Plaintiffs Parker and Parker White.

73.

Specifically, the $375,000 initial investment made pursuant to the Nassau Bay Agreement was never returned to Parker and Parker White, despite their demands for return of those funds.

74.

Plaintiffs Parker and Parker White were not paid the premium fee of $318,750 that was due at the closing of the alleged real estate transaction, and were not paid the additional $200,000 promised as part of the third extension granted in this case should the transaction close.

75.

Regions subsequently refused to pay the amounts required under the Regions Nassau Bay LOU and related extensions.

**The Midland Transaction**

76.

On or around January 21, 2011, Plaintiffs Parker and Parker White and Defendants Grossi and Fuller executed a Borrower Contract and Master Escrow

Agreement ("Midland Escrow Agreement").  A true and correct copy (with redactions) of the Midland Escrow Agreement is attached as **"Exhibit 8"**.

77.

The Midland Escrow Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Georgia" and that jurisdiction and venue for any action relative to the Agreement shall lie in Georgia.

78.

In the Midland Escrow Agreement, Fuller agreed to serve as the Escrow Agent for the "proof of funds" provided by Plaintiffs; agreed to ensure all closings would be conducted as required by the parties; agreed to deposit funds into her attorney escrow account at Regions; gave the name of the Regions account and the account number; agreed to maintain the account at Regions under her direct supervision and control; agreed to ensure that no funds were released except as provided in the Midland Escrow Agreement; agreed to return Plaintiffs' funds if the transaction did not close; and acknowledged a fiduciary obligation to Plaintiffs.

79.

Under the Midland Escrow Agreement, Plaintiffs Parker and Parker White, as agents of Plaintiffs, wired from the Escrow Account of Lynn Doss, of Doss and

- 27 -

Associates (attorneys for Parker and Parker White) the sum of $292,000 to Fuller's alleged attorney escrow account with Regions to be used only as "proof of funds."

80.

Plaintiffs T. Goddard and Callahan provided $292,000 into Fuller's alleged attorney escrow account at Regions as "proof of funds" for the Midland Transaction.

81.

In exchange for the provision of said "proof of funds" for 45 days, the Defendants promised to make certain payments to Plaintiffs which included, but were not limited to:

    a.  An immediate nonrefundable upfront fee of $43,800.

    b.  The ultimate return of the initial investment of $292,000.

    c.  A premium fee of $248,200 should the alleged real estate transaction actually close, and

    d.  Extension fees if the extensions were requested and granted.

82.

Plaintiffs were paid a total of $43,800 in immediate nonrefundable upfront fees for providing the "proof of funds," for the Midland Transaction of which $14,600 was paid to Plaintiffs T. Goddard and Callahan.

83.

On January 20, 2011, Reaves, as an officer of Regions Bank with actual or

apparent authority to act on behalf of Regions, executed, and Tracey D. Spencer

notarized, a Letter of Undertaking from Regions regarding the Midland

Transaction ("Regions Midland LOU").  A true and correct copy of the Regions

Midland LOU is attached as **"Exhibit 9"**.

84.

The Regions Midland LOU in pertinent part provided that:

> Under the condition of receipt of $292,000, at Regions
> Bank, on behalf of our client do unconditionally and
> irrevocably confirm and undertake; that on March 22,
> 2011, and for said value received, promise to pay against
> this full bank undertaking, to the order of Grant Parker of
> Parker White, LLC… the sum of $292,000….   It's
> further acknowledged that our client L. Fuller is in good
> standing at Regions Bank and will be receiving funds in
> account ending in xxx-xxx-3898 at Regions Bank….

(*See* Ex. 9.)

85.

Plaintiffs would not have entered into the Midland Transaction without the

Regions Midland LOU, together with the assurance by Regions that the funds

would be held solely in the alleged escrow account of Fuller, and with appropriate

blocks be in place to prevent the movement of Plaintiffs' funds except for the

transfer of said funds to the Escrow Account of Lynn Doss, of Doss and Associates, the attorney for Plaintiffs Parker and Parker White.

86.

Pursuant to the Midland Fee and Pay Order Agreement, the funds were "not to be transferred from the Escrow Account of the Closing Escrow Agent for any reason" other than to be returned to the Escrow Account of Lynn Doss, of Doss and Associates, the attorney for Plaintiffs Parker and Parker White and the funds were to be used only as "proof of funds" for a real estate transaction.

87.

Fuller, Reaves, Nowak, Grossi, Buckner, and Dawson represented to Plaintiffs Parker and Parker White that the funds would remain in Fuller's alleged trust account until the close of the transaction when the initial investment and all premiums would be due; or, until the Plaintiffs requested that no further extensions be granted and that the initial investment be returned to Plaintiffs.

88.

Plaintiffs Parker and Parker White were told by Fuller, Reaves, Nowak, Grossi, Buckner, and Dawson that there were delays in closing the Midland Transaction.

89.

As a result of purported delays, on or around March 28, 2011, Plaintiffs Parker and Parker White and Defendants Grossi and Fuller executed a 14 day extension of the Midland Borrower Contract and Master Escrow Agreement.

90.

As part of the extension, Plaintiffs Parker and Parker White were paid an extension fee of $17,520 by Defendants, of which $4,050 was paid to Callahan and T. Goddard.

91.

Following the extension, Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Nancy Taber Lewis notarized, a March 31, 2011 Letter of Undertaking from Regions regarding the Midland Transaction ("Regions Second Midland LOU").  A true and correct copy (with redactions) of the Regions Midland Second LOU is attached as **"Exhibit 10"**.

92.

The second (and all subsequent) Regions Midland LOUs read in pertinent part as follows:

> "Upon the condition of receipt of $292,000, in Regions account number ******3898 . . . Regions Bank does

> unconditionally and irrevocably confirm and undertake
> that _____ days past the date that the $292,000 is
> received into the above-referenced account . . . Regions
> does promise to pay against the full bank undertaking to
> the order of Lynn Dillard Doss of Doss & Associates,
> Attorneys at Law . . . the sum of $292,000."

93.

After additional delays, on or about the April 11, 2011, Grossi, Fuller and

Plaintiffs Parker and Parker White executed a second extension to the Borrower

Contract and Master Escrow Agreement in which Plaintiffs were to be paid an

extension fee of $10,220 together and the return of the initial investment, plus the

premium fee of $248,200 should the transaction close.  However, no extension fee

of $10,220 was paid.  A true and accurate copy (with redactions) of the April 11,

2011, Midland Transaction Extension is attached as **"Exhibit 11"**.

94.

As a result of said extension, on April 15, 2011 Reaves, as an officer of

Regions Bank with actual or apparent authority to act on behalf of Regions,

executed, and Michael D. Wallach notarized, a Letter of Undertaking from

Regions regarding the Midland Transaction. ("Regions Midland Third LOU").  A

true and correct copy (with redactions) of the Regions Midland Third LOU is

attached as **"Exhibit 12"**.

95.

After additional delays, on May 2, 2011, Grossi, Fuller, Parker and Parker White executed a third extension to the Borrower Contract and Master Escrow Agreement in which Plaintiffs were to be paid an extension fee of $7,300, together with the return of their initial investment, plus premium fee of $248,200 should the transaction close. A true and correct copy (with redactions) of the May 2, 2011 Midland Transaction extension is attached as **"Exhibit 13"**.

96.

Following the extension, on the May 2, 2011, Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Michael D. Wallach notarized, a May 2, 2011 Letter of Undertaking from Regions regarding the Midland Transaction ("Regions Midland Fourth LOU"). A true and correct copy (with redactions) of the Regions Midland Fourth LOU is attached as **"Exhibit 14"**.

97.

Parker and Parker White were paid $7,300 by the Defendants as consideration for entering into the third extension.

98.

After all the extensions expired, Grossi, Fuller, and Regions did not return any additional funds to Plaintiffs Parker, Parker White, Goddard, and Callahan.

99.

Specifically, the initial investment of $292,000 was not returned to Plaintiffs, despite their demands for return of those funds.

100.

Grossi did not pay the "premium" of $248,200 that was purported to be due at the closing of the alleged real estate transaction, but in reality was a false component of these fraudulent transactions.

101.

Regions subsequently refused to pay the amounts required under the Regions Midland LOU and related extensions.

**The Airport Transaction**

102.

On or around February 24, 2011, Plaintiffs Parker and Parker White and Defendants Grossi and Fuller executed a Borrower Contract and Master Escrow Agreement ("Airport Escrow Agreement").  True and correct copies (with redactions) of the Airport Escrow Agreement is attached as **"Exhibit 15"**.

103.

The Airport Escrow Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Georgia" and that jurisdiction and venue for any action relative to the Agreement shall lie in Georgia.

104.

In the Airport Escrow Agreement, Fuller agreed to serve as the Escrow Agent for the "proof of funds" provided by Plaintiffs; agreed to ensure all closings would be conducted as required by the parties; agreed to deposit funds into her attorney escrow account at Regions; gave the name of the Regions account and the account number; agreed to maintain the account at Regions under her direct supervision and control; agreed to ensure that no funds were released except as provided in the Airport Escrow Agreement; agreed to return Plaintiffs' funds if the transaction did not close; and acknowledged a fiduciary obligation to Plaintiffs.

105.

Under the Airport Escrow Agreement, Plaintiffs Parker and Parker White, as agents of the Plaintiffs, wired from the Escrow Account of Lynn Doss of Doss and Associates (attorneys for Parker and Parker White) the sum of $592,000 to Fuller's alleged attorney escrow account with Regions to be used only as "proof of funds."

106.

Plaintiffs provided $592,000 as "proof of funds" for the Airport Transaction.

107.

In exchange for the provision of said "proof of funds" for 45 days, the Defendants promised to make certain payments to Plaintiffs which included, but not limited to:

a.  An immediate nonrefundable upfront fee of $88,800.

b.  The ultimate return of the initial investment of $592,000.

c.  A premium fee of $503,200 should the alleged real estate transaction actually close, and

d.  Extension fees if the extensions were requested and granted.

108.

Plaintiffs were paid a total of $88,800 in immediate nonrefundable upfront fees for providing the "proof of funds" in the Airport Transaction, of which the sum of $22,850 was paid by Plaintiff Parker and Parker White to Plaintiffs T. Goddard, D. Callahan, W. Goddard, and M. Barker.

109.

On February 24, 2011, Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and John Patterson

notarized, a Letter of Undertaking regarding the Airport Boulevard Transaction

from Regions (mistakenly identified as "Midland," but recognized as "Airport" per

the transaction amount of $592,000). A true and correct copy (with redactions) of

the "Regions Airport LOU" is attached as **"Exhibit 16"**.

110.

All Regions Airport LOUs provided in pertinent part that:

> Under the condition of receipt of $592,000, in Regions
> Bank Account Number ******3898... Regions Bank
> does unconditionally and irrevocably confirm and
> undertake that 45 days past the date that the $592,000 is
> received into the above referenced account ending in
> ******3898, Regions does promise to pay against this
> full bank undertaking, to the order of Lynn Dillard Doss
> of Doss & Associates Attorneys at Law... the sum of
> $592,000....

(*See* Ex. 16.)

111.

Plaintiffs would not have entered into the Airport Transaction without the

Regions Airport LOU, together with the assurance by Regions that the funds would

be held solely in the alleged escrow account of Fuller, and with appropriate blocks

in place to prevent the movement of Plaintiffs' funds except for the transfer of said

funds to the Escrow Account of Lynn Doss, of Doss and Associates, Attorneys at

Law, the attorney for Plaintiff Parker and Parker White.

112.

Pursuant to the Airport Fee and Pay Order Agreement, the funds were "not to be transferred from the alleged escrow account of the closing escrow agent Fuller for any reason" and the funds were to be used only as "proof of funds" for a real estate transaction.  Fuller, Reaves, Nowak, Grossi, Buckner and Dawson represented to Plaintiffs Parker and Parker White that the funds would remain in Fuller's alleged trust account until the close of the transaction when the initial investment and all premiums would be due, or, until the Plaintiffs requested that no further extensions be granted and that the initial investment be returned to Plaintiffs.

113.

Following the Plaintiffs' commitment to issue the initial investment amount to Defendants, Plaintiffs requested and received a second LOU.  Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Karen Lee Hart notarized, a March 2, 2011 Letter of Undertaking regarding the Airport Transaction from Regions (Regions Airport Second LOU).  A true and correct copy (with redactions) of the Regions Airport LOU is attached as **"Exhibit 17"**.

114.

As the forty-fifth day approached, however, Plaintiffs Parker and Parker White were told by Fuller, Nowak, Buckner and Dawson that there were delays in closing the Airport transaction.

115.

As a result of purported delays on or around May 2, 2011, Grossi, Fuller and Parker and Parker White executed an extension to the Airport Borrower Contract and Master Escrow Agreement.

116.

As a part of the extension Plaintiffs Parker and Parker White were to be paid the additional extension fee of $14,600 together with the initial investment and the premium fee of $503,200 should the transaction close.  No such fees were paid.  A true and accurate copy (with redactions) of the May 2, 2011, Airport Transaction Extension is attached as **"Exhibit 18"**.

117.

Following the extensions, Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Michael D. Wallach notarized, a May 2, 2011, letter of undertaking regarding the Airport

Transaction from Regions ("Regions Airport Third LOU").  A true and correct copy (with redactions) of Regions Airport Third LOU is attached as **"Exhibit 19"**.

118.

After all the extensions expired, Defendants did not return any additional funds to Plaintiffs.

119.

Specifically, the initial investment of $592,000 was not returned to Plaintiffs, despite their demands for return of those funds.

120.

Plaintiffs were not paid the premium of $503,200 that was due at the closing of the alleged real estate transaction.

121.

Regions subsequently refused to pay the amounts required under the Regions Airport LOU and related extensions.

**The Almeda Transaction**

122.

On or around February 24, 2011, McLean, Fuller and Plaintiffs Parker and Parker White executed a Borrower Contract and Master Escrow Agreement

("Almeda Escrow Agreement").  True and correct copies (with redactions) of the Almeda Escrow Agreement is attached as **"Exhibit 20"**.

123.

The Almeda Escrow Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Georgia" and that jurisdiction and venue for any action relative to the Agreement shall lie in Georgia.

124.

In the Almeda Escrow Agreement, Fuller agreed to serve as the Escrow Agent for the "proof of funds" provided by Plaintiffs; agreed to ensure all closings would be conducted as required by the parties; agreed to deposit funds into her attorney escrow account at Regions; gave the name of the Regions account and the account number; agreed to maintain the account at Regions under her direct supervision and control; agreed to ensure that no funds were released except as provided in the Almeda Escrow Agreement; agreed to return Plaintiffs' funds if the transaction did not close; and acknowledged a fiduciary obligation to Plaintiffs.

125.

Under the Almeda Escrow Agreement, Plaintiffs Parker and Parker White, as agents of Plaintiffs, wired from the Escrow Account of Lynn Doss, of Doss and Associates (attorneys for Plaintiffs Parker and Parker and White) the sum of

$398,000 to Fuller's alleged attorney escrow account with Regions, to only be used only as "proof of funds."

126.

Plaintiffs T. Goddard, D. Callahan, W. Goddard, and M. Barker provided $398,000 as "proof of funds" for the Almeda Transaction.

127.

In exchange for the provision of said "proof of funds" for 45 days, the Defendants promised to make certain payments to Plaintiffs which included, but not limited to:

a.  An immediate nonrefundable upfront fee of $59,700.

b.  The ultimate return of the initial investment of $398,000.

c.  A premium fee of $338,300 should the alleged real estate transaction actually close, and

d.  Extension fees if the extensions were requested and granted.

128.

Plaintiffs were paid an immediate nonrefundable upfront fee of $59,700 for providing the "proof of funds" for the Almeda Transaction, of which $19,900 was paid to Plaintiffs T. Goddard, D. Callahan, W. Goddard and M. Barker.

129.

On February 24, 2011 Reaves, as an officer of Regions Bank with actual or

apparent authority to act on behalf of Regions, executed, and John Patterson

notarized a Letter of Undertaking (mistakenly identified as "Midland," but

recognized as "Almeda" per the transaction amount of $398,000) regarding the

Almeda Transaction from Regions ("Regions Almeda LOU").   A true and correct

copy (with redactions) of the Regions Almeda LOU is attached as **"Exhibit 21"**.

130.

All Regions Almeda LOUs provided in pertinent part that:

> Under the condition of receipt of $398,000, in Regions
> Bank Account Number ******3898...   Regions Bank
> does unconditionally and irrevocably confirm and
> undertake that 45 days past the date that the $398,000.00
> is received into the above referenced account ending in
> ******3898, Regions does promise to pay against this
> full bank undertaking, to the order of Lynn Dillard Doss
> of Doss & Associates Attorneys at Law... the sum of
> $398,000....

(*See* Ex. 21.)

131.

Plaintiffs would not have entered into the Almeda Transaction without the

Regions Midland LOU, together with the assurance by Regions that the funds

would be held solely in the alleged escrow account of Fuller, and appropriate

- 43 -

blocks be in place to prevent the movement of Plaintiffs' funds except for the transfer of said funds to the Escrow Account of Lynn Doss of Doss and Associates, attorney for Plaintiffs Parker and Parker and White.

132.

Pursuant to the Almeda Fee and Pay Order Agreement the funds were "not to be transferred from the Escrow Account of the Closing Escrow Attorney for any reason other than to be returned to the Escrow Account of Lynn Doss, of Doss and Associates, the attorney for Plaintiffs Parker and Parker White, and the funds were to be used only as "proof of funds" for a real estate transaction.

133.

Fuller, Reaves, Nowak, McLean, Buckner and Dawson represented to Plaintiffs Parker and Parker White that the funds would remain in Fuller's alleged trust account until the close of the transaction or when the initial investment and all premiums would be due; or, until the Plaintiffs requested that no further extensions be granted and that the initial investment be returned to Plaintiffs.

134.

Following the Plaintiffs' commitment to issue the initial investment, Plaintiffs requested and received a Second LOU.  Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and

Karen Lee Hart notarized, a March 2, 2011 Letter of Undertaking regarding the Almeda Transaction from Regions (Regions Almeda Second LOU). A true and correct copy (with redactions) of the Regions Almeda Second LOU is attached as **"Exhibit 22"**.

135.

Similar to the Midland Transaction and Airport Transaction, there were purported "delays" in closing the Almeda Transaction.

136.

Due to additional purported delays, Plaintiffs Parker and Parker White and Defendants McLean and Fuller executed an extension to the Almeda Borrower Contract and Master Escrow Agreement on May 2, 2011. A true and accurate copy (with redactions) of the Almeda Borrower Contract and Master Escrow Agreement Extension is attached as **"Exhibit 23"**.

137.

As part of the extension, Plaintiffs Parker and Parker White were to be paid an extension fee of $23,800 by Defendants, but no such fee was ever paid.

138.

Following the extension Reaves, as an officer of Regions Bank with actual or apparent authority to act on behalf of Regions, executed, and Michael D.

- 45 -

Wallach notarized, a Letter of Undertaking from Regions regarding the Almeda Transaction ("Regions Almeda Third LOU").  A true and correct copy (with redactions) of the Regions Midland Third LOU Almeda is attached as **"Exhibit 24"**.

139.

After the extension expired, McLean, Fuller, and Regions (through Reaves) did not return any additional funds to Plaintiffs.

140.

Specifically, Plaintiffs were not paid their initial investment of $398,000, despite demanding return of those funds.

141.

Plaintiffs did not receive a premium of $338,300 that was purported to be due at the closing of the alleged real estate transaction.

142.

Regions subsequently refused to pay the amounts required under the Regions Almeda LOU and related extensions.

## Defendants' Pattern of Racketeering Activity

143.

Upon information and belief, Defendants Fuller, Buckner, Dawson, Grossi, McLean, and Nowak, led by Nowak and Grossi, have conspired to perpetrate their Unlawful Scheme on several occasions, against a number of victims, in different areas of the country.

144.

Upon information and belief, the Texas State Securities Board is currently investigating Dawson and Buckner related to other fraudulent transactions.

145.

Prior to the transactions at issue in this case, Defendant Nowak solicited Plaintiff Parker to participate in other real estate investment deals, a number of which were successful and provided a profit to Parker.  Upon information and belief, these smaller-scale real estate deals were designed to build Parker's trust of Nowak so as to encourage Parker to provide "proof of funds" for the transactions involved in the Unlawful Scheme.

146.

Nowak also conspired with Grossi, and several other unknown individuals to induce Parker to enter a series of transactions in Illinois that took place between

January 2010 and August 2010. Parker later discovered that the Illinois transactions were similar to the Underlying Scheme, and that Nowak and Grossi and their co-conspirators had converted the funds he invested in the Illinois transactions.

## COUNT I

### Breach of Contract

### (Against Regions)

147.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if fully set forth herein.

148.

Regions has failed and refused to reimburse the funds deposited by Plaintiffs in Fuller's attorney escrow account as required by the notarized Letters of Undertaking issued by Reaves.

149.

Reaves issued the notarized Letters of Undertaking in the course of his employment with the actual or apparent authority to do so, and Regions is obligated by the Letters to return Plaintiffs' funds.

150.

As a direct and proximate result of Regions' material breaches of the Letters of Undertaking, Plaintiffs have suffered damages, including expenses and attorneys' fees incurred to enforce the terms of the Letters of Undertaking, in an amount to be determined at trial but no less than **TWO MILLION DOLLARS ($2,000,000)**.

## COUNT II

### Breach of Contract

### (Against Fuller, Grossi, and McLean)

151.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if fully set forth herein.

152.

As described above, Fuller, Grossi, and McLean have breached the terms of the Midland Escrow Agreement, the Airport Escrow Agreement, the Almeda Escrow Agreement, and the Nassau Bay Escrow Agreement (the "Escrow Agreements") that they entered into with Plaintiffs Parker and Parker White.

153.

Plaintiffs Parker and Parker White are contractually obligated to pursue, on behalf of the remaining Plaintiffs, the funds invested by the remaining Plaintiffs.

154.

Fuller, Grossi, and McLean have failed and refused to honor the Escrow Agreements.

155.

Fuller, Grossi, and McLean have failed and refused to return the funds provided by Plaintiffs and deposited in Fuller's account by Plaintiffs Parker and Parker White as "proof of funds," as required by the Escrow Agreements.

156.

Fuller, Grossi, and McLean have failed and refused to pay Plaintiffs Parker and Parker White "premium" returns on the investment by Plaintiffs as required by the Escrow Agreements.

157.

As a direct and proximate result of Fuller, Grossi, and McLean's material breaches of the Escrow Agreements, Plaintiffs have suffered damages, including expenses and attorneys' fees incurred to enforce the terms of the Letters of

Undertaking, in an amount to be determined at trial but no less than **TWO MILLION DOLLARS ($2,000,000).**

## COUNT III

### Conversion

### (Against All Defendants)

158.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if fully set forth herein.

159.

As part of an unlawful scheme and without authorization of Plaintiffs, Defendants withdrew, or allowed withdrawal of, Plaintiffs' money from Fuller's purported escrow account at Regions.

160.

Defendants benefitted from taking Plaintiffs' money.

161.

As part of the unlawful scheme, Defendants exercised the right of ownership over and took possession of Plaintiffs' property.

## COUNT IV

### Fraud/Intentional Misrepresentation

### (Against All Defendants)

162.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

163.

Defendants conspired and engaged in conduct that constitutes fraud, including but not limited to:

(a)    Developing, implementing, participating in, and profiting from an unlawful scheme to steal Plaintiffs' money;

(b)    Falsely representing that the money deposited as "proof of funds" in Fuller's attorney trust account could not be removed for any reason except to return the money back to Plaintiffs;

(c)    Falsely representing that the money deposited by Plaintiffs was being used as "proof of funds" in legitimate real estate transactions;

(d)    Receiving Plaintiffs' money with the intent to convert it;

(e)    Falsely representing that Reaves was a Senior Vice President of Regions with the authority to bind the bank for up to $10 million;

(f)      Failing and refusing to act according to the Escrow Agreements and
Letters of Undertaking;

(g)      Establishing an alleged attorney escrow account for Fuller even
though Fuller did not possess the financial requirements to open such an account;

(h)      Asserting that the account to which said funds would be wired, by the
Plaintiffs, was a proper attorney escrow account; and

(i)      Permitting persons other than Fuller to be made a signator to Fuller's
alleged attorney escrow account.

164.

Defendants, in conspiring with each other and on behalf of each other, made
false representations to Plaintiffs through affirmative acts, commissions and
omissions, in writing, by phone, by email and other means of communication on
numerous occasions during the time frame of January 2011 to May 2011.

165.

Defendants knew the representations or omissions to Plaintiffs were false,
and intentionally made the representations, commissions or omissions to induce
Plaintiffs to act or to refrain from acting.

166.

Defendant Reaves committed the acts set forth above in the course of his employment and with apparent authority from his employer, Defendant Regions.

167.

Plaintiffs justifiably relied on the acts, commissions or omissions of Defendants to their detriment.

168.

As a result, Plaintiffs have suffered compensatory damages in an amount to be proven at trial, but not less than **TWO MILLION DOLLARS ($2,000,000)**.

## COUNT V

### Negligent Misrepresentation

### (Against All Defendants)

169.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

170.

Defendants made the representations and warranties to Plaintiffs as set forth in the complaint, including Count IV.

171.

These statements were false and misleading statements of material fact.

172.

At the time Defendants made these representations to Plaintiffs, they should have known the information was false and misleading, and they failed to make a reasonable investigation of the truth of the information.

173.

Defendants owed a duty of care to Plaintiff to make such investigation. At the time Defendants made these representations to Plaintiffs, they had a pecuniary interest in the transaction.

174.

At the time Defendants made these representations to Plaintiffs, they intended Plaintiffs to rely upon such misrepresentations, so as to induce Plaintiffs into providing their money as "proof of funds."

175.

Defendant Reaves made these misrepresentations to Plaintiffs in the course of his employment and with apparent authority from his employer, Defendant Regions.

176.

Plaintiffs justifiably relied upon the misrepresentations of Defendants in contributing funds.

177.

As a result, Plaintiffs have suffered damages in an amount to be proven at trial, but not less than **TWO MILLION DOLLARS ($2,000,000)**.

## COUNT VI

**Unjust Enrichment**

**(Against Reaves, Fuller, Buckner,**

**Dawson, Grossi, McLean, and Nowak)**

178.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

179.

Defendants improperly took Plaintiffs' funds for their own use.

180.

Defendants have received the benefit of the $1.657 million Plaintiffs put up as "proof of funds" and, therefore, have been unjustly enriched.

181.

The reasonable value of the unjust enrichment conferred upon Defendants is at least $1,300,000, plus interest.

182.

It would be inequitable to allow Defendants to retain the benefits conferred upon them without compensation to Plaintiffs.

## COUNT VII

### Violations of 18 U.S.C. § 1961, *et seq*.

### Racketeering Influenced Corrupt Organizations Act ("RICO")

### (Against All Defendants)

183.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

184.

This is a civil RICO action brought by Plaintiffs pursuant to 18 U.S.C. § 1964.

185.

Plaintiffs are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

186.

Defendants are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

187.

Defendants, acting in concert to implement, conduct and conceal the Unlawful Scheme, constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (the "Enterprise").

188.

Upon information and belief, the Enterprise is an organized and ongoing unit led by Grossi and Nowak, in which each Defendant has an established role, and through which Defendants implemented the Unlawful Scheme, as well as other similar schemes, over the course of more than one year.

189.

Through a pattern of racketeering activities in the Unlawful Scheme, each Defendant acquired or maintained, directly or indirectly, an interest in or control of

the Enterprise, which was engaged in, or the activities of which affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(5) and 1962(b).

190.

Each Defendant is an owner of, employed by, or associated with the Enterprise, which is engaged in, or the activities of which affect, interstate commerce, and each Defendant conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs and the Unlawful Scheme, and conspired to do so, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c).

191.

Defendants conspired to violate the provisions of 18 U.S.C. §§ 1962(b) and (c), in violation of § 1962(d).

192.

Each Defendant's participation in the Enterprise was essential to the success of the Enterprise and the Unlawful Scheme.

193.

In violation of 18 U.S.C. § 1962, Defendants have engaged in, or knowingly participated in, the operation or management of the Enterprise and the Unlawful Scheme through a continuing, related pattern of racketeering activity, as defined by

18 U.S.C. § 1961(5), by engaging in a series of two or more predicate acts of

racketeering within ten years, including:

(a)    Wire fraud in violation of 18 U.S.C. § 1343:

        i.    Defendants intentionally devised the Unlawful Scheme to

              defraud Plaintiffs of their property and profits.

        ii.    Continually between January 2011 and May 2011, Defendants,

              operating through the Enterprise, intentionally used interstate

              wires for the purposes of executing, or attempting to execute

              the Unlawful Scheme.

(b)    Bank fraud in violation of 18 U.S.C. § 1344:

        i.    Defendants knowingly devised and executed the Unlawful

              Scheme to fraudulently obtain funds under the custody or

              control of Regions Bank.

        ii.    In each of the transactions described above, Defendants caused

              the funds deposited by Plaintiffs as "proof of funds" to be

              removed from Fuller's alleged attorney escrow account under

              the custody of Regions by fraudulent means.

(c)    Transportation in interstate commerce of money or property stolen or

taken by fraud in violation of 18 U.S.C. § 2314:

     i.    Continually between January 2011 and May 2011, Defendants transported, transmitted and transferred, or caused to be transported, transmitted or transferred, in interstate commerce, Plaintiffs' money or property, which Defendants stole, converted, or fraudulently obtained through the Unlawful Scheme.

     ii.    The money or property that was stolen, converted or fraudulently obtained through the Unlawful Scheme has a value of $5,000 or more.

     iii.    Defendants knew that the money or property obtained through the Unlawful Scheme was stolen, converted or fraudulently obtained.

(d)    Interstate travel or use of mail in aid of racketeering activities in violation of 18 U.S.C. § 1952:

     i.    Continually between January 2011 and May 2011, Defendants travelled, or caused other persons to travel, in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Unlawful Scheme.

      ii.     Continually between January 2011 and May 2011, upon information and belief, Defendants used, or caused other persons to use, facilities in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the Unlawful Scheme.

(e)    Engaging in monetary transactions in property acquired by unlawful activity in violation of 18 U.S.C. § 1957:

      i.     Upon information and belief, Defendants knowingly engaged or attempted to engage in monetary transactions that they knew involved property derived from their unlawful activity and participation in the Unlawful Scheme.

      ii.     The monetary transactions related to the Unlawful Scheme affected or involved interstate commerce and involved property worth more than $10,000.

(f)    Receiving, possessing, concealing, storing, selling or disposing of any goods, ware, merchandise or money, which have crossed state lines after being stolen, in violation of 18 U.S.C. § 2315:

    i.    Defendants received, possessed, concealed, stored, or disposed of stolen, converted or fraudulently obtained money or property worth more than $5,000 through the Unlawful Scheme.

    ii.    Defendants knew that the money or property obtained through the Unlawful Scheme had been stolen, converted or fraudulently obtained.

    iii.    Defendants knew the money or property obtained through the Unlawful Scheme crossed a state boundary after having been stolen, converted or fraudulently obtained.

194.

The predicate acts committed by Defendants were related and continuous in nature. Had Plaintiffs not demanded return of their funds and brought this action, Defendants would have continued the Unlawful Scheme indefinitely by continuing to seek extensions of the Escrow Agreements, and by continuously providing extensions of the Regions Letters of Undertaking. Additionally, the Unlawful Scheme alleged herein is only one of an unknown number of similar schemes that have been or will be perpetrated by Defendants.

195.

Plaintiffs sustained injury to its business and property by Defendants'
violations of 18 U.S.C. § 1962 within the meaning of 18 U.S.C. 1964, and
Plaintiffs are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. §
1964(c) in an amount to be proven at trial but in any event not less than **SIX
MILLION DOLLARS ($6,000,000)**.

## COUNT VIII

### Conspiracy

### (Against All Defendants)

196.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1
through 146 as if more fully set forth herein.

197.

Defendants in concert committed wrongful acts in furtherance of the
Unlawful Scheme.  Defendants conspired with each other and on behalf of each
other to devise the Unlawful Scheme, whereby malicious misrepresentations were
made to Plaintiffs to cause Plaintiffs to wire funds to the attorney trust account of
Fuller.

198.

Defendants conspired with each other and on behalf of each other to remove Plaintiffs' funds from the attorney trust account of Fuller and distribute the funds to Defendants.

## COUNT IX

### Negligent Hiring and Supervision

### (Against Regions)

199.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

200.

Reaves made oral and written representations that he held the position of Senior Vice President and that he had authority to bind Regions by executing the Letters of Undertaking.  In addition, Reaves stated that, as a result of his position, he had the authority to order the bank to place "blocks" on the funds wired by Plaintiffs into the alleged escrow account of Fuller so as to prevent the funds from being removed unless they were being returned to Doss's escrow account.

201.

The Regions Letters of Undertaking were executed by Reaves, a Regions Bank officer acting in the course of his employment and with authority on behalf of Regions, and based on information and belief, notarized by Regions employees.

202.

Plaintiff Parker visited Reaves' office at Regions prior to entering into any of the aforementioned transactions, and during that meeting Reaves conveyed to Parker that he was a Regions senior bank officer.

203.

Based on the representations by Reaves and the other Defendants, notarized Letters of Undertaking, and Reaves' office at Regions, Plaintiffs Parker and Parker White, on behalf of themselves and Plaintiffs, reasonably believed that Reaves was a Senior Vice President of Regions with the authority to bind Regions by executing the Letters of Undertaking.

204.

Regions has acknowledged that Reaves was in management at Regions and the Letters of Undertaking were in fact signed and notarized at Regions.

205.

Regions should have discovered Reaves' fraudulent activity and participation in the Unlawful Scheme during the course of his employment at Regions. By failing to reasonably supervise Reaves, Regions negligently allowed Reaves to repeatedly defraud and harm the Plaintiffs.

## COUNT X

### Accounting and Equitable and Injunctive Relief

### (Against All Defendants)

206.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

207.

Plaintiffs request an accounting of all funds unlawfully obtained and converted by Defendants as part of the Unlawful Scheme.

208.

Plaintiffs have a reasonable and serious concern that Defendants have dispersed and will continue to disperse Plaintiffs' funds. Accordingly, Plaintiffs request a constructive trust over all property purchased with Plaintiffs' funds.

209.

Plaintiffs further request preliminary and permanent injunctive relief to prevent Defendants from further dispersing Plaintiffs' funds.

## COUNT XI

### Breach of Fiduciary Duty

### (Against Fuller)

210.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

211.

Per the written agreements, Fuller has a fiduciary duty to Plaintiffs Parker and Parker White.

212.

Fuller breached her fiduciary duty, causing damage to Plaintiffs.

## COUNT XII

### Tortious Interference with Business Relations

### (Against All Defendants)

213.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

214.

Plaintiffs had contractual relationships.

215.

Defendants are knowledgeable about the contractual relationships of the Plaintiffs.

216.

Defendants intentionally and wrongfully interfered with the contractual relationships.

217.

Plaintiffs have been damaged as a result of the tortuous interference of Defendants with their business relationships in an amount to be determined at trial.

## COUNT XIII

### Attorneys' Fees

### (Against All Defendants)

218.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

219.

Defendants have been stubbornly litigious, and have caused Plaintiffs

unnecessary trouble, time, and expense, and has acted in bad faith.

220.

As a result of Defendants' misconduct, Plaintiffs are entitled to recover their attorneys' fees pursuant to O.C.G.A. § 13-6-11 and otherwise under Georgia law and federal law.

## COUNT XIV

### Punitive Damages

### (Against All Defendants)

221.

Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 146 as if more fully set forth herein.

222.

Defendants' conduct, as particularized above, was willful, intentional, and reckless.

223.

As a result of the foregoing misconduct, Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial but in any event not less than **TEN MILLION DOLLARS ($10,000,000)**.

## Jury Demand

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)     Enter preliminary and permanent injunctive relief to prevent Defendants from further dispersing Plaintiffs' funds;

(b)     Enter judgment in favor of Plaintiffs and against Defendants in an amount not less than **TWO MILLION DOLLARS ($2 million)**, and trebled pursuant to RICO;

(c)     Award Plaintiffs their attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11;

(d)     Award Plaintiffs punitive damages in an amount not less than **TEN MILLION DOLLARS ($10,000,000);**

(e)     Hold Defendants jointly and severally liable; and

(f)     Grant such other and further relief as is just, proper and equitable.

This 30th day of April, 2012.

/s/Richard L. Robbins
Richard L. Robbins
Georgia Bar No. 608030
Jason S. Alloy
Georgia Bar No. 013188
Rachel F. Gage
Georgia Bar No. 547982

ROBBINS · ROSS · ALLOY ·
  BELINFANTE · LITTLEFIELD LLC
999 Peachtree Street NE, Suite 1120
Atlanta, Georgia 30309-3996
Telephone:  (678) 701-9381
Facsimile:  (404) 856-3250

*Counsel for Plaintiffs Tommy Goddard,
David Callahan, Mike Barker, and Waymon
J. Goddard*


/s/Jeffrey J. Dean
*(by RLR with express permission)*
Jeffrey J. Dean
Georgia Bar No. 006890
MORRIS & DEAN
P.O. Box 2005
Dalton, GA  30722
Telephone:  (706) 229-4362

*Counsel for Plaintiffs Grant Parker and
Parker White LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing

**AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system,

which automatically sent counsel for Plaintiffs Grant Parker and Parker White

LLC, and counsel for Defendant Regions, e-mail notification of such filing:

William J. Holley, II
Erin M. Moore
1500 Marquis Two Tower
285 Peachtree Center Avenue, N.E.
Atlanta, Georgia 30303
Phone: 404-523-5300
Fax: 404-522-8409
wholley@phrd.com
emoore@phrd.com
*Counsel for Defendant Regions*
*Financial Corporation*

Jeffrey J. Dean
P.O. Box 2005
Dalton, GA 30722
Phone: 706-229-4362
Fax: 706-275-6167
jeff@morrisanddean.com
*Counsel for Plaintiffs Grant Parker and*
*Parker White LLC*

I further certify that I have placed the foregoing in the **U.S. Mail**, postage

prepaid and properly addressed to:

Mr. William McLean
687 99th Ave.
N. Naples, Florida 34108
*Pro se Defendant*

Lanease Dickens-Fuller
Law Office of Lanease D. Fuller
4615 Southwest Freeway Suite 820
Houston, Texas 77027
*Pro se Defendant*

This 30th day of April, 2012.

/s/ Rachel F. Gage
Rachel F. Gage